Vaselj VULJAJ and Hana Vuljaj, Petitioners,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 02–3269.

United States Court of Appeals, Sixth Circuit.

Sept. 16, 2003.

**794**

David H. Paruch, Troy, MI, for Petitioner.

Papu Sandhu, Deborah Misir, James A. Hunolt, U.S. Department of Justice, Office of Immigration Litigation, Washington, DC, for Respondent.

Before KEITH, COLE, and COOK, Circuit Judges.

KEITH, Circuit Judge.

Petitioners, Mr. Vaselj Vuljaj and Mrs. Hana Vuljaj, seek judicial review of the Board of Immigration Appeals's order affirming the Immigration Judge's denial of their application for asylum and withholding of deportation. The Immigration Judge held that Mr. and Mrs. Vuljaj failed to present adequate evidence to show that they were victims of past persecution or that they have a well-founded fear of future persecution based on ethnic origin, religion, nationality, membership in a particular social group, or political opinion. Mr. and Mrs. Vuljaj, therefore, failed to qualify as "refugees" under the Immigration and Nationality Act. The Board of Immigration Appeals affirmed. For the reasons set forth below, we **DENY** Mr. and Mrs. Vuljaj's petition for review and **AFFIRM** the judgment of the Board of Immigration Appeals.

## I. BACKGROUND

### A. Factual Background

Petitioners, Mr. Vaselj Vuljaj and Mrs. Hana Vuljaj, husband and wife, are ethnic Albanian natives from the former Yugoslavia and citizens of the former Yugoslav Republic of Montenegro. Mr. and Mrs. Vuljaj lived in Titograd, Montenegro and worked at a hospital in Petagrad. Mr. Vuljaj was a hospital laboratory technician, a position he held for seventeen years. Mrs. Vuljaj was an x-ray technician, a position she held for ten years.

In late 1991 and early 1992, Mr. and Mrs. Vuljaj assisted Bosnian refugees by providing food and shelter. As a result of this assistance and their Albanian ethnicity, neighbors and co-workers accused them of holding anti-government sympathies. In fact, their employer, who was also aware of their assistance to Bosnian refugees, fired both Mr. and Mrs. Vuljaj from their positions at the hospital. The hospital later filled these positions with Serbians who escaped from Sarajevo during the war. Neither Mr. Vuljaj nor Mrs. Vuljaj sought alternative employment in the former Yugoslavia on the assumption that they could not obtain employment during a period of such racial upheaval. Therefore, Mr. Vuljaj began to work at his parents' farm in a nearby village.

During this same time period, conscription for military service in Montenegro

began. Although Mr. Vuljaj served in the Yugoslavian army for fifteen months in 1979, he refused to serve in the military in 1992. Mr. Vuljaj objected to killing people who were his friends. Mr. Vuljaj received several notices of his military obligation, but he failed to comply. Therefore, in September 1992, he was arrested and held in a military detention camp until he escaped, approximately twenty-seven days later. During his detainment. Mr. Vuljaj stated that he was fed on a regular basis and he was not beaten, but he claims that he was interrogated.

Mr. and Mrs. Vuljaj also claim that their home was vandalized due to their assistance to Bosnian refugees and their Albanian ethnicity. On at least on three or four occasions, their home and car were vandalized. Mrs. Vuljaj argues that their neighbors broke their windows because they believed Mr. and Mrs. Vuljaj were anti-government. Due to this vandalism and the fact that her husband was arrested, Mrs. Vuljaj and their son left their home and stayed with a relative.

In April 1993, several months after Mr. Vuljaj's escape from the military detention camp, Mr. Vuljaj paid $5,000 for travel documents and fled to the United States, via New York, as a visitor for pleasure. Two months later, Mrs. Vuljaj and their son followed and arrived in Detroit. The travel documents authorized them to stay in the United States until October 3, 1993.

### B. Procedural Background

On December 21, 1994, the Immigration and Naturalization Service issued Orders to Show Cause and Notice of Hearing alleging that Mr. and Mrs. Vuljaj were deportable because they remained in the United States longer than authorized in violation of § 241(a)(1)(B) of the Immigration and Nationality Act ("INA"). 8 U.S.C. § 1251(a)(1)(B) (1994). Mr. and Mrs. Vuljaj admitted to the factual allega-

tions contained in the Orders to Show Cause and conceded to their deportability. Therefore, the Immigration Judge ("IJ") held that they were deportable. Although Mr. and Mrs. Vuljaj declined to designate a country of deportation, the IJ designated Yugoslavia.

Subsequently, on February 14, 1996, Mr. and Mrs. Vuljaj applied for asylum and withholding of deportation. In the alternative, they sought voluntary departure. The IJ sent Mr. and Mrs. Vuljaj's application of asylum and withholding of deportation to the State Department for comment. In response to this request, the State Department submitted two publications: (1) Profile of Asylum Claims and Country Conditions for Serbia/Montenegro. April 1996 ("Profile"): and (2) United States Department of State Country Reports on Human Rights Practices for 1995 relating to Serbia/Montenegro ("Country Reports").

On May 9, 1997, the IJ held a hearing. At this hearing, Mr. and Mrs. Vuljaj appeared and testified that they were seeking asylum based on two primary grounds. First, they claimed that they were unjustly fired from their positions at the hospital due to their Albanian ethnicity and their assistance to Bosnian refuges. Second, Mr. Vuljaj claimed that he was detained for evading military service and, if he returned to Montenegro, he will probably be sent to prison and killed for refusing to serve in the military.

Although the IJ found their testimony to be credible, the IJ held that the incidents alleged in their testimony were insufficient to warrant asylum and withholding of deportation. The IJ did, however, grant voluntary departure. In his oral decision, the IJ held that Mr. and Mrs. Vuljaj failed to establish past persecution or a well-founded fear of future persecution based on

race, religion, nationality, membership in a particular social group, or political opinion.

The IJ combined the inquiries of whether Mr. and Mrs. Vuljaj suffered past persecution and whether they had a well-founded fear of future persecution. As to Mr. and Mrs. Vuljaj's job loss, the IJ stated that a loss of one's job does not rise to the level of persecution, particularly in the absence of evidence that no other employment existed for Mr. and Mrs. Vuljaj. Furthermore, there was no evidence that the hospital, a non-government entity, could further persecute them and prohibit them from seeking alternative employment in their country.

As to Mr. Vuljaj's arrest and detention for failing to comply with the conscription laws, the IJ held that the government has the lawful authority to require military service and to enforce such laws. Moreover, even though the government has this authority, according to the State Department, the government in Montenegro has granted asylum for those who avoided military service. Therefore, the government of Serbia and Montenegro would not have any inclination to further prosecute Mr. Vuljaj for evading military service.

Accordingly, the IJ determined that, because Mr. and Mrs. Vuljaj failed to satisfy the lower burden of establishing past persecution or a well-founded fear of future persecution, they could not satisfy the higher burden required for establishing the withholding of deportation. Therefore, the IJ ordered that they voluntarily depart by November 9, 1997.

Mr. and Mrs. Vuljaj filed a timely appeal to the BIA. The BIA reviewed the evidence below and relied on the Profile and Country Reports, which the State Department submitted in response to Mr. and Mrs. Vuljaj's application for asylum. The Profile stated that, as ethnic Albanians, Mr. and Mrs. Vuljaj would likely face discrimination in Montenegro, although discrimination is worse in Kosovo. In addition, the Profile stated that, while ethnic Albanians are subject to military service, the military rarely recruits them because they do not want to arm such minorities.

On February 12, 2002, the BIA affirmed the IJ's denial of asylum and withholding of deportation. After reviewing the evidence, the BIA determined that the record supported the IJ's decision that Mr. and Mrs. Vuljaj failed to present adequate evidence to demonstrate past persecution or a well-founded fear of future persecution. The BIA held that, although Mr. and Mrs. Vuljaj were fired from their jobs and Mr. Vuljaj was arrested and detained for evading military service, the harm they suffered did not constitute persecution and any fear of future persecution was not reasonable. The BIA noted that the government has the right to require military service and detain evaders, although it may not punish someone for objecting to inhuman acts, which was not the case here. Furthermore, even though the Profile stated that ethnic Albanians face discrimination, the BIA held that discrimination based on race, religion, or another protected ground, does not rise to the level of persecution under the INA. The BIA concluded that, as Mr. and Mrs. Vuljaj failed to satisfy their burden required for asylum, they also failed to satisfy the higher burden required for withholding of deportation. Thus, the BIA dismissed their appeal and ordered Mr. and Mrs. Vuljaj to depart voluntarily within thirty days of its order.

On March 7, 2002, Mr. and Mrs. Vuljaj filed a timely petition for review of the BIA's decision. Mr. and Mrs. Vuljaj argue that: (1) the BIA erred in finding that the facts do not support a grant of asylum; (2) the IJ misinterpreted and misapprehended the facts presented; (3) the IJ erred by not considering documentation of incidents

of persecution, specifically the incidents of vandalism; and (4) the IJ erred by failing to give proper weight to recent incidents affecting their family.

## II. DISCUSSION

### A. Standard of Review

This court reviews the BIA's legal conclusions *de novo. Adhiyappa v. INS,* 58 F.3d 261, 265 (6th Cir.1995). However, this court must apply the substantial evidence standard of review in reviewing the BIA's factual determinations regarding an alien's eligibility for asylum and withholding of deportation. Under this deferential standard, the BIA's determinations "must be upheld if 'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *INS v. Elias–Zacarias,* 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992) (quoting 8 U.S.C. § 1105a(a)(4)); *see Klawitter v. INS,* 970 F.2d 149, 152 (6th Cir.1992). In order to reverse the BIA's determinations, "the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it." *Klawitter,* 970 F.2d at 152 (citing *Elias–Zacarias,* 502 U.S. at 481). A court may not grant a petition for review merely because it would have decided the case differently. *Mikhailevitch v. INS,* 146 F.3d 384, 388 (6th Cir.1998) (citing *Klawitter,* 970 F.2d at 151–52). Rather, the BIA's determinations must be upheld unless the alien establishes that the evidence presented was "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias,* 502 U.S. at 484.

### B. Asylum

■ Under the INA, the Attorney General has the discretion to grant asylum to a "refugee." *See* 8 U.S.C. § 1158(a) (1994). An application for asylum, thus, involves a two-part inquiry: (1) whether the applicant is a "refugee" as defined by the INA; and (2) whether the applicant "merits a favorable exercise of discretion by the Attorney General." *Perkovic v. INS,* 33 F.3d 615, 620 (1994) (citing *INS v. Cardoza–Fonseca,* 480 U.S. 421, 428 n. 5, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987)). The INA defines a "refugee" as a person who is unable or unwilling to return to his or her home country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion...." 8 U.S.C. § 1101(a)(42)(A) (1994). An applicant for asylum bears the burden of establishing that the applicant qualifies as a refugee "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution." 8 C.F.R. § 208.13(b) (1999). "The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 208.13(a) (1999).

In order to establish a well-founded fear of persecution, the applicant must prove that: "(1) he or she has a fear of persecution in his or her country on account of race, religion, nationality, membership in a particular social group, or political opinion; (2) there is a reasonable probability of suffering such persecution if he or she were to return to that country; and (3) he or she is unable or unwilling to return to that country because of such fear." *Mikhailevitch,* 146 F.3d at 389 (citing *Perkovic,* 33 F.3d at 620–21). Therefore, an applicant's fear must be subjectively genuine and objectively reasonable. The applicant must "actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic,* 33 F.3d at 620 (quoting *Cardoza–Fonseca,* 480 U.S. at 430–31). Although the INA

does not define "persecution," this court has held that "persecution" "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. An asylum applicant who satisfies the burden of establishing past persecution is presumed to have a well-founded fear of future persecution and it is the government's burden to overcome this presumption. *Id.* at 389 (citing 8 C.F.R. § 208.13(b)(1)(i) (1997)).

As evidence in support of their claim for asylum, Mr. and Mrs. Vuljaj testified that they suffered past persecution and have a well-founded fear of future persecution based on three primary grounds. They testified that: (1) they were unjustly fired from their positions at the hospital due to their Albanian ethnicity and their assistance to Bosnian refugees; (2) Mr. Vuljaj was detained for evading military service and, if he returns to Montenegro, he will probably be sent to prison and killed for refusing to serve in the military; and (3) neighbors vandalized their home and cars because they believed Mr. and Mrs. Vuljaj were anti-government. The BIA determined that the record supported the IJ's decision that Mr. and Mrs. Vuljaj failed to present adequate evidence to demonstrate past persecution. We agree.

Mr. and Mrs. Vuljaj's job loss, Mr. Vuljaj's detention for evading military service, and a few incidents of vandalism do not amount to persecution. First, although Mr. and Mrs. Vuljaj lost their jobs and were replaced by Serbians, they presented no evidence that the hospital prevented them from obtaining alternative employment. Second, Mr. Vuljaj's detention for evading military service was lawful as governments have the right to require military service and penalize for noncompliance. In fact, the evidence is clear that

the government did not detain Mr. Vuljaj for his Albanian ethnicity or his assistance to Bosnian refugees, but detained him simply for his evasion of mandatory military service. Last, a few isolated incidents of vandalism may constitute harassment, but it does not constitute persecution. This court has held that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. Although it is true that Mr. and Mrs. Vuljaj were discriminated against, the discrimination they suffered does not rise to the level of persecution that is required to warrant a grant of asylum. Accordingly, substantial evidence exists to support the IJ's and BIA's findings.

■ Because Mr. and Mrs. Vuljaj failed to establish past persecution, they were not entitled to the presumption of a well-founded fear of future persecution pursuant to 8 C.F.R. § 208.13(b)(1)(i). Therefore, they retained the burden of establishing a well-founded fear of persecution. Mr. Vuljaj argues that, if he returned to Yugoslavia, he will probably be arrested and killed for escaping from the military detention camp as he is an ethnic Albanian and assisted Bosnian refugees. Mrs. Vuljaj argues that she will probably be arrested as well because she is an ethnic Albanian and assisted Bosnian refugees. Both the IJ and BIA, however, determined that Mr. and Mrs. Vuljaj failed to establish a well-founded fear of future persecution based on ethnic origin, religion, nationality, membership in a particular social group, or political opinion. Relying on the evidence below, including the State Department's submissions regarding the conditions of Montenegro, the BIA concluded that Mr. and Mrs. Vuljaj were credible, but their fear was not objectively reasonable.

In order to reverse the IJ's judgment and the BIA's affirmance, we would have to conclude that the foregoing evidence is "so compelling that no reasonable factfinder could fail to find the requisite fear of persecution." *Elias–Zacarias*, 502 U.S. at 484. We find that the evidence presented is not so compelling.

Although Mr. Vuljaj fears that he will be imprisoned and probably killed for his evasion of military service, this fear is not objectively reasonable because the government of Serbia and Montenegro granted amnesty to such evaders. Furthermore, according to the Profile, while ethnic Albanians are subject to military service, the military rarely recruits them because they do not want to arm such minorities. Therefore, it is unlikely that Mr. Vuljaj will be required to serve in the military or be further prosecuted for evading military service. In addition, as to their job loss, there is no evidence to show that the hospital or the government would prevent Mr. and Mrs. Vuljaj from obtaining alternative employment. A reasonable person in their circumstances would not fear such persecution as is required for the IJ to grant asylum.

Because Mr. and Mrs. Vuljaj failed to qualify as "refugees" within the meaning of the INA. we do not need to discuss part two of the asylum inquiry. *See Perkovic*, 33 F.3d at 620. Therefore, we find that the BIA's order affirming the Immigration Judge's denial of their application for asylum is supported by substantial evidence.

## C. Withholding of Deportation

An applicant seeking withholding of deportation has a more stringent burden of proof than the one for asylum. *See Cardoza–Fonseca*, 480 U.S. at 431–32; *Mikhailevitch*, 146 F.3d at 391. In order to be eligible for withholding of deportation, an applicant must establish that there is a clear probability that he or she would be subject to persecution if returned to his or her country. *Mikhailevitch*, 146 F.3d at 391; *Ivezaj v. INS*, 84 F.3d 215, 221 (6th Cir.1996). Because substantial evidence exists to support the BIA's determination that Mr. and Mrs. Vuljaj are ineligible for asylum, we must necessarily find that they are unable to fulfill the more stringent burden required for withholding of deportation.

## III. CONCLUSION

For the foregoing reason, we **DENY** the petition for review and **AFFIRM** the judgment of the BIA.