NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 05a0010n.06
Filed: January 5, 2005

No. 03-4253

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| GABRIEL GIRIGAN, | ) | |
| | ) | |
| *Petitioner-Appellant,* | ) | |
| | ) | |
| v. | ) | On Appeal from the Board of |
| | ) | Immigration Appeals |
| JOHN ASHCROFT, | ) | |
| | ) | |
| *Respondent-Appellee.* | ) | |

Before: **BOGGS, Chief Judge; CLAY, Circuit Judge; and WALTER, District Judge.**[*]

**BOGGS, Chief Judge.** Gabriel Girigan appeals from denial by the Board of Immigration Appeals of his application for asylum and associated relief. Because the Immigration Judge ("IJ") had substantial evidence to support his conclusion that Girigan does not qualify as a refugee and because Girigan's due process rights were not violated by the Board of Immigration Appeals's ("BIA") review of his case, we affirm.

**I**

---

[*]The Honorable Donald E. Walter, United States District Judge for the Western District of Louisiana, sitting by designation.

Gabriel Girigan is a citizen of Romania from Nasaud, a city in the Transylvania region of the country. He entered the United States without any valid means of entry on December 20, 2000. The Immigration and Naturalization Service ("INS") initiated removal proceedings against him shortly thereafter. Girigan conceded removability, but filed an asylum application seeking asylum under 8 U.S.C. § 1158 and withholding of removal under 8 U.S.C. § 1231(b)(3). During his hearing, he requested relief under the United Nations Convention Against Torture.

Girigan claims to have been persecuted in Romania because of his political opinion. He testified that, in the late 1990s, he and his brother became active in a political group called "Free Transylvania," which sought Transylvania's independence from the rest of Romania. Girigan claimed that his participation in the group involved attending meetings of the group and distributing leaflets to people on the street. In the 2000 election, Free Transylvania was aligned with the Greater Romania Party, which finished second in the national elections. Girigan testified that he and other members of Free Transylvania believed that the election was fixed by the winner of the Presidential election, Ion Iliescu. Following Iliescu's election, he maintained that people from his town's branch of Free Transylvania "disappeared." A few weeks later, Girigan claimed, he and his brother were followed home by plain-clothes agents. Though he and his brother never spoke to the agents, Girigan claimed that the agents came to their house and spoke with their parents, informing the parents that the agents wanted to speak to Girigan and his brother. Shortly after that incident, Girigan testified, he left the country.

Girigan appeared before the IJ with the assistance of counsel and an interpreter. Following a hearing, the IJ denied Girigan all relief, concluding that Girigan had neither a subjectively genuine

No. 03-4253
Girigan v. Ashcroft

nor an objectively reasonable fear of persecution. Girigan timely appealed to the BIA, which

affirmed the IJ's decision without issuing an opinion.

**II**

The decision to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir.

2003). The first step is whether the applicant qualifies as a refugee. Only if the petitioner qualifies

as a refugee may the Attorney General exercise his discretion and grant asylum. *Ibid.*; 8 U.S.C. §

1158(b). In this case, the IJ and the BIA ended the inquiry at the first step, determining that Girigan

did not qualify as a refugee. It is this determination that we now review on appeal.

A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of

persecution or a well-founded fear of persecution on account of race, religion, nationality,

membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where,

as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly.

*Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003). We review that decision under the substantial

evidence test. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). In the immigration context, that

test has been construed to allow reversal only if "the evidence presented by [the petitioner] was such

that a reasonable factfinder would have to conclude that the requisite fear of persecution existed."

*INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This standard has since been codified such that

this court can reverse only if "any reasonable adjudicator would be compelled to conclude to the

contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 702-03 & n.2 (6th Cir. 2004)

("officially adopt[ing]" substantial evidence as articulated in § 1252(b)(4)(B)).[1]

Under § 1101(a)(42)(A), Girigan bears the burden of proving that his fear of persecution is

both subjectively genuine and objectively reasonable. *See Mikhailevitch v. INS*, 146 F.3d 384, 389

(6th Cir. 1998). Girigan can establish a presumption that he fears future persecution by proving he

suffered persecution in the past. *See ibid.* In the absence of corroborating documents, Girigan's

testimony will satisfy his burden of proof if it is "*believable, consistent, and sufficiently detailed* to

provide a plausible and coherent account of the basis of his fear [of persecution]." *Perkovic v. INS*,

33 F.3d 615, 621 (6th Cir. 1994) (emphasis added and internal citations omitted). The IJ concluded

that Girigan had failed to establish either a subjectively genuine or objectively reasonable fear of

persecution. We conclude that the IJ's determination is supported by substantial evidence.

The IJ considered Girigan's testimony to be vague in describing crucial aspects of his

account of persecution: the "disappearance" of other members of Free Transylvania following the

election and the incident during which plain-clothes agents followed Girigan and his brother home.

The record supports the conclusion that Girigan's testimony was vague. Girigan testified that the

people who disappeared after the election were friends of his. But he never gives their names or

describes his relationship to them other than to say that they were also members of Free

---

[1]Though the IJ denied Girigan's requests for withholding of removal and protection under the Convention Against Torture, Girigan does not raise any argument about either of these two grounds in his brief. Relief on those grounds is therefore waived. *United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001); *see also Abati v. Ashcroft*, 101 Fed. Appx. 626, 627 (6th Cir. June 17, 2004) (unpublished opinion) (holding that Convention Against Torture claim is waived because it is absent from appellant's brief).

Transylvania who he would meet often because of their friendship. Though Girigan's asylum application stated a specific number of people who "disappeared" and noted that both regular members and leaders went missing, his application and testimony never discuss who these people were, the role they played in the organization, or any details regarding any individual disappearance. In short, the testimony is so lacking in detail that the IJ was acting within his discretion in not believing it.

Girigan is also vague when describing the incident where he and his brother were followed home. He offers no details as to where he and his brother were coming from or, apart from it occurring after the elections, when it happened. Girigan says that they did not go directly home but fails to in any way describe what other route they took. He does not describe the men who followed him and his brother, though he purports to have known such details at some point in the past because he claims to have described them to his friends afterwards. Furthermore, the IJ is correct in pointing out two contradictions in his testimony. Girigan stated in his asylum application that other members of Free Transylvania were the ones who first identified the men who followed him and his brother as plain-clothes agents. He initially testified, however, that he and his brother recognized them as such. The IJ is also correct that Girigan testified that the people who followed him home were political agents of Iliescu, whereas in his asylum application he described them as federal agents. Though there are possible explanations for these contradictions, Girigan does not offer us any, nor can we identify one that would compel us to conclude that he has met his burden of proof. *See Yu*, 364 F.3d at 704 (finding petitioner's explanations for IJ's cited inconsistencies insufficient to

compel conclusion that petitioner was credible). For these reasons, the IJ had substantial evidence not to believe Girigan's depiction of events.

The IJ's determination that no other aspect of Girigan's account constitutes persecution is also supported by substantial evidence. This court has held that "'persecution' within the meaning of 8 U.S.C. § 1001(a)(42)(A) requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch*, 146 F.3d at 390. Under this standard, Girigan cannot establish that he has suffered past persecution entitling him to a presumption of future persecution. *Id.* at 389. Because the IJ has substantial evidence to discount Girigan's statements concerning his friends "disappearing" or that he was followed home, the only aspect of his account that could constitute past persecution is that he was once brought into the police station for distributing leaflets in a neighboring town.[2] The police officer, who was drunk, kept Girigan there for two hours, most of which he spent just sitting around the station. Girigan was asked a few questions, told not go to the town anymore, and let go. We are not compelled to conclude that this incident amounted to harassment, let alone persecution. *Cf. id.* at 390 (substantial evidence supported conclusion that repeated interrogations and searches of a person's home amounted to persecution rather than mere harassment).

---

[2]It appears that Girigan was also twice brought in for rowdy behavior, apparently related to drinking.

The IJ's conclusions are supported by substantial evidence. Because Girigan's testimony is vague and at times contradictory, some reasonable adjudicator could well conclude that he had not met his burden of proof for establishing persecution.

**III**

Girigan devotes most of his brief to challenging the BIA's streamlined review process. This court has already decided that the BIA's streamlined procedures for reviewing asylum claims violates neither the Due Process Clause nor principles of administrative law. *Denko*, 351 F.3d at 727-32 & n.10. When *Denko* was decided, the streamlined review process was found at 8 C.F.R. § 1003.1(a)(7). *See id.* at 727-29. The current streamlined process, now found at 8 C.F.R. § 1003.1(e)(4), is not materially different from the streamlined process at issue in *Denko*. *See Meraja v. Ashcroft*, 113 Fed. Appx. 147, 149-50 & n.1 (6th Cir. Oct. 29, 2004) (unpublished opinion) (applying *Denko* to due process challenge to § 1003.1(e)(4)); *see also Ambartsoumian v. Ashcroft*, 388 F.3d 85, 89 & n.2 (3d Cir. 2004) (rejecting challenge to § 1003.1(e)(4) based on previous court precedent affirming constitutionality of streamlined process found at § 1003.1(a)(7)); *Oforji v. Ashcroft*, 354 F.3d 609, 618-19 & n.6 (7th Cir. 2003) (same result). Girigan does not direct us to any legally significant difference between the current streamlined review process and that affirmed in *Denko*. Our own review of the regulations, and this court's reasoning in *Denko,* confirms that no such difference exists. Girigan's due process and administrative law challenges to the streamlined review process therefore fail. For these reasons, we AFFIRM the judgment of the BIA.