NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 05a0582n.06
Filed: July 11, 2005

No. 04-3047

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

ILIR MUCLLARI,                                    )
                                                  )
    Petitioner-Appellant,                         )
                                                  )
v.                                                )   On Petition for Review of an Order
                                                  )   of the Board of Immigration
ALBERTO GONZALES, Attorney General,               )   Appeals
                                                  )
    Respondent-Appellee.                          )

**Before:**  **BOGGS, Chief Judge; GILMAN, Circuit Judge; and CLELAND, District Judge.**[*]

**PER CURIAM.**  Ilir Mucllari appeals from a denial by the Board of Immigration Appeals ("BIA") of his application for asylum and associated relief. Because the Immigration Judge ("IJ") had substantial evidence to support his conclusion that Mucllari does not qualify as a refugee and because Mucllari's due process rights were not violated by the BIA's review of his case, we affirm.

## I

Mucllari is a native and citizen of Albania who entered the United States without inspection near Brownsville, Texas on December 19, 2000. Mucllari filed an application for asylum with the

---

[*]The Honorable Robert H. Cleland, United States District Judge for the Eastern District of Michigan, sitting by designation.

No. 04-3047
Mucllari v. Gonzales

Immigration and Naturalization Service ("INS")[1] on December 10, 2001. The INS issued Mr. Mucllari a Notice to Appear on January 10, 2002, and commenced removal proceedings against him. At a hearing on May 3, 2002, Mucllari appeared with counsel, admitted the allegations contained in the Notice to Appear, conceded his inadmissability, and voiced the intent to seek relief in the form of asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Mucllari stated that he was born on April 30, 1977 and was a life-long resident of Pogradec, Albania. His father is deceased, and his mother, with whom he remains in regular contact, continues to reside in Pogradec. Mucllari sought asylum on the basis that he had been persecuted in the past on account of his political opinion and membership in the Democratic Party in Albania and feared future persecution on the same account.

Mucllari stated that his family had a history of being "targeted by Communists" because two of his uncles were imprisoned under the Communist regime. He claimed that as a result of his uncles' arrests by the prior Communist regime, his family was "labeled people's enemy," which caused them a difficult life marked by poverty and isolation. Mucllari stated further that his hopes to continue his education and become a financier were thwarted because he could not attend his desired school on account of his family history.

Concerning persecution because of his own political activities, Mucilari asserted that he joined the Democratic Party ("DP") on March 2, 1996, participating in meetings and outreach. Almost immediately, he received a job in the post office because of his party membership. In the

_____

[1]On March 1, 2003, the INS ceased to exist as an agency within the Department of Justice and its functions were transferred to the Department of Homeland Security.

next round of elections, June 29, 1997, the Socialist Party defeated the DP. As a direct result of this

political change, Mucllari asserts, he lost his post office job in November 1997. Mucllari's asylum

application claimed further that, in 1998, "I have been taken few times at the police station, I have

been questioned, beaten and then released after have been threatened." Mucllari testified that every

time he was detained he was beaten, but was never seriously injured. At the hearing, when he was

asked if he had ever been arrested, accused, or detained by Albanian police, Mucllari replied that

he had been stopped by police and warned to "behave" "a couple of times." He claimed these

detentions lasted "not more than three days." When asked when these incidents occurred, Mr.

Mucliari declared he couldn't remember because "it has been four or five times." Mucllari was also

rather vague about the number of times he had been detained, a fact that the IJ noted as follows:

> Now, according to the record of your interview with the asylum officer you said that
> after you joined the Democratic Party in '96 the police arrested and detained you six
> or seven different times . . . then today you said you were stopped four or five times.
> So I don't understand. These are different. Which is which?

(J.A. 82.)

In February 1998, Mucllari obtained a sales job in a private store, and simultaneously

became more active in the DP, serving as a delegate from his village at regional DP conferences.

Mucllari's application stated that he attended a regional DP meeting in June 1999, and shortly after

returning from it, his employer informed him the "chairman of the commune" wanted to see him.

Mucllari claimed that he went to see the chairman as requested, and was there met also by the chief

of police. Mucllari claimed both men angrily confronted him, demanded he tell them what happened

at the recent regional DP meeting, and "reminded me that if I won't tell him all that I know I would

pay like my uncles." In response, Mucllari claimed: "I told him that was nothing against the law and that I had done nothing wrong."

Finally, Mucllari alleged that, on July 7, 1999, he was attacked by three unknown assailants who told him that the attack was "coming from the chairman of the commune and that if I didn't disappear I would be killed." After this attack, Mucllari went to stay with his aunt in Durres,[2] where he remained until October 4, 2000, when he left Durres for Greece en route to the United States. On his written application, he claimed that "[after the attack] I could barely walk. I arrived home all achy and bruised and for three to four days I laid on the bed being treated by my cousin . . . who is the doctor." He testified at the hearing, however, that he left home for Durres within hours of the attack.

The IJ found that Mucllari was generally credible, but also found that his inability to recall the number of times he was allegedly arrested adversely affected the weight that could be given his testimony. The IJ stated that "it appears to the Court that if the respondent cannot remember the number of incidents beyond general numbers these encounters made only a slight impression on him." The IJ found that the incidents of mistreatment claimed by Mucllari – the loss of a political job after the opposing party took office, several police encounters, and one incident in which he was accosted by three unidentified men – did not, even in the aggregate, "rise to the level of past persecution" as that term has been interpreted under the INA. Regarding the claim of a well-founded fear of future persecution, the IJ found that Mucllari did not establish an objectively

---

[2]Durres is a city on the Adriatic Coast of Albania. Mucllari's home town of Pogradec is located near Albania's eastern borders with both Greece and Serbia.

reasonable or well-founded fear, noting specifically that Mucllari "did not suggest that he could not live elsewhere in Albania." Finally, regarding Mucllari's CAT claim, the IJ noted that Mucllari did not demonstrate past torture, had lived safely in Albania for over a year after the July 7, 1999, attack, and did not suggest he could not now safely live elsewhere in Albania. Further, there was no evidence to suggest that Mucllari had, or would in the future, suffer human rights abuses that rise to the level of torture as contemplated by the applicable regulations.

Mucllari appealed the IJ's denial of asylum to the BIA, which affirmed the IJ's decision without issuing an opinion. Mucllari timely appeals the decision of the BIA.

## II

The decision to grant asylum is a two-step inquiry. *Ouda v. INS*, 324 F.3d 445, 451 (6th Cir. 2003). The first step is whether the applicant qualifies as a refugee. Only if the petitioner qualifies as a refugee may the Attorney General (and by delegation an IJ) exercise his discretion and grant asylum. *Ibid.*; 8 U.S.C. § 1158(b). In this case, the IJ and the BIA ended the inquiry at the first step, determining that Mucllari did not qualify as a refugee. It is this determination that we now review on appeal.[3]

---

[3]Though the IJ denied Mucllari 's requests for withholding of removal and protection under the Convention Against Torture, Mucllari failed to exhaust his administrative remedies regarding those claims because he did not appeal the denial of withholding of deportation or the Convention Against Torture to the BIA. We therefore lack jurisdiction to review the denial of those claims. *See* 8 U.S.C. § 1252(d)(1). In addition, Mucllari does not raise either of those two issues in his brief to this court. Relief on those grounds is therefore waived. *United States v. Mick*, 263 F.3d 553, 567 (6th Cir. 2001); *see also Abati v. Ashcroft*, 101 Fed. Appx. 626, 627 (6th Cir. June 17, 2004) (unpublished) (holding that Convention Against Torture claim is waived because it is absent from appellant's brief).

A refugee is an alien who is "unable or unwilling to return to . . . [his] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision directly. *Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003). We review that decision under the substantial evidence standard. *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004). In the immigration context, that standard has been construed to allow reversal only if "the evidence presented by [the petitioner] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). This standard has since been codified such that this court can reverse only if "any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B); *see also Yu*, 364 F.3d at 702-03 & n.2 (6th Cir. 2004) ("officially adopting" substantial evidence as articulated in § 1252(b)(4)(B)).

Under § 1101(a)(42)(A), Mucllari bears the burden of proving that his fear of persecution is both subjectively genuine and objectively reasonable. *See Mikhailevitch v. INS*, 146 F.3d 384, 389 (6th Cir. 1998). Mucllari can establish a presumption that he fears future persecution by proving he suffered persecution in the past. *See ibid.* In the absence of corroborating documents, Mucllari's testimony will satisfy his burden of proof if it is "believable, consistent, and sufficiently detailed to provide a plausible and coherent account of the basis of his fear [of persecution]." *Perkovic v. INS*, 33 F.3d 615, 621 (6th Cir. 1994) (internal citations omitted). The IJ found that Mucllari's claim of past persecution rested on three claims of mistreatment: the loss of a political

patronage job after the opposing party took office, several police encounters, and one incident in which he was accosted by three unidentified men.

The loss of a job – particularly a political patronage job, which, the IJ noted, happens in the United States – does not by itself constitute persecution. *See Vuljaj v. INS*, 77 Fed. Appx. 793, 798 (6th Cir. 2003) (unpublished) (holding that the loss of a job does not constitute persecution absent evidence that alien was prevented from obtaining alternative employment); *see also Kovac v. INS*, 407 F.2d 102, 107 (9th Cir. 1969) (holding that alien claiming economic loss must demonstrate deliberate imposition of substantial economic disadvantage so severe that he was deprived of all means of earning a living). The IJ found that Mucllari's inability to recall the number of times he was allegedly arrested did not undermine his general credibility, but found that this inability adversely affected the weight that could be given his testimony about these incidents. The IJ stated that "it appears to the Court that if the respondent cannot remember the number of incidents beyond general numbers these encounters made only a slight impression on him." (J.A. 24.) The IJ concluded that while the beating incident alleged by Mucllari would not be tolerated in the United States, "that does not mean it rises to the level of persecution," and that the arrests he described were "more in the nature of police harassment [] than persecution." (J.A. 26.) We cannot say that any reasonable adjudicator would have been compelled to conclude to the contrary.[4]

_____

[4]*Cf. Nelson v. INS*, 232 F.3d 258, 264 (1st Cir. 2000) ("To qualify as persecution, a person's experience must rise above unpleasantness, harassment, and even basic suffering."); *id.* at 262-63 (finding no past persecution where there were three episodes of solitary confinement of 72 hours or less, each accompanied by physical abuse); *Ravindran v. INS*, 976 F.2d 754, 756-60 (1st Cir. 1992) (finding no persecution where member of minority ethnic group had been interrogated and beaten for three days in prison and warned about pursuing political activities); *Kapcia v. INS*, 944 F.2d 702,

Regarding the claim of a well-founded fear of future persecution, the IJ found that Mucllari did not establish an objectively reasonable or well-founded fear. Mucllari's claim that he will be killed if he returns to Albania, because the three unknown men who attacked him told him he would be "eliminated," and because the Socialist Party is in power, is undermined by his testimony that he lived undisturbed in the town of Durres from July 8, 1999 to October 4, 2000, and that his mother continues to live undisturbed in the town in which Mucllari was born. *See Tawm v. Ashcroft*, 363 F.3d 740, 743-44 (8th Cir. 2004) (finding that alien who lived undisturbed after incident and whose family members continued to live in country without harassment showed no well-founded fear of future persecution); *Ochave v. INS*, 254 F.3d 859, 867 (9th Cir. 2001) (finding that fact that alien relocated within home country and remained unharmed for one year after alleged persecution is substantial evidence supporting denial of asylum). The IJ noted specifically that Mucllari "did not suggest that he could not live elsewhere in Albania." (J.A. 27.) As with the IJ's conclusion that Mucllari failed to demonstrate past persecution, we cannot determine that any reasonable adjudicator would be compelled to conclude that Mucllari did demonstrate a well-founded fear of future persecution.

**III**

---

704, 708 (10th Cir. 1991) (finding no past persecution where one applicant was "arrested four times, detained three times, and beaten once," and another "was detained for a two-day period during which time he was interrogated and beaten" and warned not to continue his Political activities); *Kubon v. INS*, 913 F.2d 386, 388 (7th Cir. 1990) ("[B]rief confinement for political opposition to a totalitarian regime does not necessarily constitute persecution.").

Mucllari devotes most of his brief to challenging the BIA's streamlined review process, on the grounds that it violates the Due Process Clause and various principles of administrative law. The arguments he raises are identical to those raised by Mucllari's counsel in our recent case, *Girigan v. Ashcroft*, 121 Fed. Appx. 577 (6th Cir. 2005) (unpublished). For the same reasons, Mucllari's challenge to the BIA's review fails, as the BIA's streamlined procedures for reviewing asylum claims violate neither the Due Process Clause nor principles of administrative law. *See id.* at 580-81; *see also Denko*, 351 F.3d at 727-32 & n.10. For these reasons, we AFFIRM the judgment of the BIA.