NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0823n.06
Filed: October 6, 2005

No. 04-3343

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| ALEXANDER TEKIE, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW OF A |
| | ) | DECISION OF THE BOARD OF |
| ALBERTO GONZALES, | ) | IMMIGRATION APPEALS |
| | ) | |
| | ) | OPINION |
| Respondent. | ) | |
| | ) | |

Before: GUY, BATCHELDER, and GILMAN, Circuit Judges.

**RONALD LEE GILMAN, Circuit Judge.** Alexander Tekie, an Ethiopian national of Eritrean ethnicity, was admitted to the United States on a nonimmigrant visa in November of 1987. He later obtained a student visa when he entered college. In 1994, the INS began removal proceedings against Tekie for having not complied with the terms of his student visa. He responded by filing an application for asylum, the withholding of removal, and protection under the Convention Against Torture (CAT). His original application was denied by an immigration judge (IJ) in 1999, but Tekie's subsequent motion to reopen the proceedings was granted. In 2004, an IJ found that Tekie was not a credible witness and ordered him removed to Eritrea, or in the alternative to

-1-

Ethiopia. The IJ's holding was summarily affirmed by the Board of Immigration Appeals (BIA).

For the reasons set forth below, we **DENY** Tekie's petition for review of the BIA's order.

## I. BACKGROUND

### A.       Factual background

Tekie was born in Asmara, a city that used to be located in Ethiopia but is now the capital

of Eritrea. He later moved with his family to Addis Ababa, the present capital of Ethiopia. Tekie

maintains that, while in Ethiopia, he was involved with the Eritrean People's Liberation Front, a

group whose purpose was to agitate for an independent Eritrean state. Eritrea gained its

independence from Ethiopia in 1993.

Although the record is conflicting, Tekie alleges that he was arrested by Revolutionary

Guards in 1984, held for two weeks, and received beatings on the bottom of his feet with rubber

hoses in an effort to get him to reveal the names of other Liberation Front members. Tekie also

contends that he was arrested in 1985 for being an hour late to a required government-sponsored

meeting on Marxist ideology. He does not claim to have been beaten or otherwise tortured during

this arrest, nor does he argue that this detention was related to his activities with the Eritrean

People's Liberation Front.

In 1986, Tekie left Ethiopia, going first to Kenya and then to Israel, where he allegedly

underwent treatment for a hearing disability. Tekie eventually came to the United States in

November of 1987 using a valid nonimmigrant visa.

### B.       Procedural background

Soon after entering the United States, Tekie enrolled at Mott Community College in Flint, Michigan. He was thus able to obtain a student visa. The Immigration and Naturalization Service (INS), however, claimed that Tekie failed to comply with the terms of his student status. This caused the INS to commence removal proceedings against him in 1994. Tekie then filed an application for asylum, the withholding of removal, and protection under the CAT. An IJ found that Tekie was removable. Tekie withdrew his application for reasons not stated in the record and was ordered to depart the United States voluntarily by October 25, 1997.

In September of 1997, however, Tekie sought to reopen his deportation proceedings, arguing that he had maintained seven years of continuous residence in the United States and was therefore entitled to a suspension of deportation. The IJ denied the motion to reopen. Tekie once again moved to reopen the deportation proceedings in January of 1999, this time arguing that country conditions in Ethiopia had changed, making it necessary for him to remain in the United States. This motion was unopposed by the government, and, on February 9, 1999, it was granted by an IJ.

In November of 2002, Tekie was again found removable. The IJ found that Tekie was not a credible witness. She also concluded that the events from the 1980s described by Tekie, even if taken as true, did not constitute "the extreme conduct required for persecution." The IJ further denied Tekie's claims for the withholding of removal and for protection under the CAT, and ordered that Tekie be deported to Eritrea, or in the alternative to Ethiopia. A panel of the BIA adopted and affirmed the IJ's opinion in a one-page order. This timely appeal followed.

## II. ANALYSIS

## A.     Standard of review

As an initial matter, because the BIA adopted and affirmed the reasoning of the IJ, we will review those aspects of the IJ's decision directly. *Singh v. Ashcroft*, 398 F.3d 396, 401 (6th Cir. 2005). The IJ's "findings of fact, such as whether an alien qualifies as a refugee, [are reviewed] under the substantial evidence standard, keeping in mind that such findings are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" *Id.* at 400 (quoting *Yu v. Ashcroft*, 364 F.3d 700, 702 (6th Cir. 2004)). This deferential standard "'does not entitle a reviewing court to reverse . . . simply because it is convinced that it would have decided the case differently.'" *Klawitter v. INS*, 970 F.2d 149, 151-52 (6th Cir. 1992) (citation omitted). Importantly, "credibility determinations are findings of fact" to be reviewed under this standard. *Yu*, 364 F.3d at 703. We review de novo, however, any "alleged due process violation[s]." *Castellano-Chacon v. INS*, 341 F.3d 533, 552 (6th Cir. 2003).

## B.     Tekie's challenge to the adverse-credibility determination by the IJ

One of Tekie's principal contentions on appeal is that the IJ improperly determined that Tekie was not a credible witness. Before we can consider the merits of this claim, however, we must first address the government's argument that Tekie has waived the challenge because he failed to mention the IJ's adverse-credibility finding either in his notice of appeal to the BIA or in his brief to that agency. This court has held that "[i]t is proper for an appellate court to consider waived all issues not raised in an appellant's briefs [before the BIA], even if the issue has been raised in the notice of appeal." *Ramani v. Ashcroft*, 378 F.3d 554, 558 (6th Cir. 2004); *see also Gojcevic v. Gonzales*, No. 04-4091, 2005 WL 1799393, at *7 (6th Cir. 2005) (unpublished) (finding that the

court did not have jurisdiction to entertain claims that were not mentioned in either the petitioner's notice of appeal to the BIA or in his brief submitted to the BIA). The general rule, therefore, is that "only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal." *Ramani*, 378 F.3d at 560.

In the present case, the handwritten form containing the substance of Tekie's appeal to the BIA makes no mention of the IJ's adverse-credibility determination. And Tekie's 15-page brief to the BIA makes only one oblique reference to the adverse-credibility finding when it mentions that Tekie's "testimony, which did substantiate and expand upon the statements set forth in his asylum application and previous limited testimony before the Court, is credible." Tekie's single, obscure reference was not sufficient to preserve this claim for appeal. *See Ramani*, 378 F.3d at 560. We therefore hold that Tekie has waived his challenge to the IJ's adverse-credibility determination.

In any event, we note that even if Tekie had properly preserved this issue for appeal, there is substantial evidence to support the IJ's adverse-credibility determination. Tekie's testimony with regard to his alleged arrests, for example, conflicts with his various applications for asylum. There is likewise conflicting evidence about Tekie's age when he left Ethiopia and his alleged inability to renew his Ethiopian passport. He also acknowledges that he left Ethiopia to seek medical treatment for his hearing problem, not because of any alleged persecution. In sum, although another IJ might have decided the case differently, there are enough inconsistencies such that a "reasonable adjudicator" reviewing these facts would not be "compelled to conclude to the contrary.'" *Yu*, 364 F.3d at 702 (quoting 8 U.S.C. § 1252(b)(4)(B)).

**C.     Tekie's claims of past persecution and fear of future persecution**

We also have concluded that the two arrests described by Tekie were not sufficient to constitute past persecution. An applicant establishes past persecution if he "has suffered persecution in the past in the applicant's country of nationality . . . on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 208.13(b)(1). Such persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998). Indeed, persecution is "'an extreme concept that does not include every sort of treatment our society regards as offensive.'" *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (citation omitted).

Tekie was allegedly beaten on his feet during his first detention, an isolated incident that was never again repeated in the two remaining years that he lived in Ethiopia. In addition, Tekie does not claim that he suffered any mental or physical abuse the second time that he was allegedly detained. The fact that an applicant continues to live in his home country undisturbed after an alleged instance of persecution clearly weighs against his claim. *See, e.g.*, *Mucllari v. Gonzales*, No. 04-3047, 2005 WL 1621093, at *4 (6th Cir. 2005) (unpublished) (noting that the claim of an applicant was "undermined" because he had been living undisturbed in his country of nationality for over a year after his alleged persecution). Therefore, the IJ's determination that Tekie could not demonstrate past persecution was supported by substantial evidence.

Even if Tekie has not suffered past persecution, he could still be eligible for asylum upon demonstrating a well-founded fear of future persecution if deported to Eritrea or Ethiopia. *See*

8 C.F.R. § 208.13(b) (stating that an applicant for asylum bears the burden of establishing that he qualifies as a refugee "either because he or she has suffered past persecution or because he or she has a well-founded fear of future persecution"). An applicant "must actually fear that he will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Perkovic v. INS*, 33 F.3d 615, 620-21 (6th Cir. 1994). The IJ, in considering this issue, concluded that Tekie's fear of future persecution "is not subjectively real nor is it objectively reasonable."

With regard to Eritrea, the IJ's decision is clearly supported by substantial evidence. When asked what type of persecution he would suffer upon a return to Eritrea, Tekie claimed only economic hardship, because many Eritreans are unemployed. In addition, as the government notes, the Eritrean People's Liberation Front, the group to which Tekie belonged, presently controls the Eritrean government.

Tekie's fear of future persecution in Ethiopia, the alternative destination, also falls short. Though relations between Ethiopia and Eritrea have occasionally been hostile, the situation as reflected by the record is no longer as contentious. *See Negeya v. Gonzales*, 417 F.3d 78, 84 (1st Cir. 2005) (rejecting the petition of an ethnic Eritrean who claimed that she would be immediately forced into exile if she was deported to Ethiopia, relying in large part on a 2002 State Department Country Report indicating that tension between the two nations has subsided). The IJ's decision on this point was therefore supported by substantial evidence.

**D.      Tekie's claims for the withholding of asylum and for protection under the CAT**

Tekie also argues that the IJ erred when she denied his claims for the withholding of removal and for protection under the CAT. The withholding of removal is an available remedy if an applicant can demonstrate that his "life or freedom would be threatened in the proposed country of removal on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 C.F.R. § 1208.16(b). "An applicant seeking withholding of removal faces a more stringent burden than what is required on a claim for asylum." *Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004).

As discussed above, Tekie has failed to demonstrate how the economic harm that he would allegedly suffer if returned to Eritrea supports a claim for a well-founded fear of future persecution. This claim of economic harm is similarly unsupportive of a claim for the withholding of removal. *See Koliada v. INS*, 259 F.3d 482, 489 (6th Cir. 2001) ("Because substantial evidence supports the [BIA's] determination that Koliada is ineligible for asylum, it therefore follows that he cannot satisfy the more stringent standard for withholding of deportation."). The IJ's decision to deny Tekie's claim for the withholding of removal was therefore supported by substantial evidence.

To obtain relief under the CAT, an applicant bears the burden of establishing that "it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2). Because Tekie was unable to satisfy the substantial-evidence standard required for asylum, his claim for relief under the CAT also fails.

**E.     Alleged procedural violations**

Tekie further claims that his hearing before the IJ suffered from two procedural flaws. His first complaint is that the IJ erred in refusing to admit the affidavit of Dr. Yacob Fisseha, a professor

of agricultural economics at Michigan State University. Dr. Fisseha's affidavit was offered by Tekie at the asylum hearing, but the IJ concluded that the document was inadmissible because Dr. Fisseha was not an "expert" in Ethiopian country conditions. Tekie argues that the IJ "committed a reversible error in not admitting Dr. Fisseha's affidavit into evidence, and the case warrants remand on this ground alone."

His second complaint is that he suffers from a hearing disability, which Tekie cites as the reason he originally left Ethiopia. He claims that, during the asylum hearing, his bad ear was facing the IJ, and that "[s]ome of his alleged inconsistent statements were directly attributed to his shortness of hearing."

Even if these contentions had merit, which the government does not concede, the government is correct in pointing out that Tekie never made these arguments to the BIA. These arguments have therefore been waived, and we lack the jurisdiction to entertain them. *See Ramani v. Ashcroft*, 378 F.3d 554, 560 (6th Cir. 2004) (noting that "only claims properly presented to the BIA and considered on their merits can be reviewed by this court in an immigration appeal").

**F. Tekie's alleged status as a "stateless" individual**

Tekie next claims that he is a "stateless individual" for whom deportation to either Eritrea or Ethiopia would be improper. He argues, without citing any authority, that "[n]either designation, Ethiopia or Eritrea, satisfies as a country which would openly accept him." Tekie has not attempted to obtain an Eritrean passport (or even to renew his Ethiopian passport). He in effect presents nothing more than the mere assertion that he is, in fact, stateless. As such, we find that the IJ properly identified Eritrea as the country to which Tekie should be deported.

**G.     The BIA's summary affirmance of the decision by the IJ**

Tekie's last contention is that the BIA acted improperly in affirming and adopting the decision of the IJ without itself issuing a detailed opinion.  He maintains that "[w]ithout an explanation of the reasons for the decision, the Court could not determine whether the Board adequately and correctly evaluated and applied each of the . . . criteria before issuing the . . . decision."  This court, however, has held that

> it is not a due process violation for the BIA to affirm the IJ's decision without issuing an opinion.  Even if the BIA would view the factual and legal issues differently from the immigration judge, the summary-affirmance-without-opinion rule renders the IJ's decision the final agency order, and we review that decision.

*Denko v. INS*, 351 F.3d 717, 730 (6th Cir. 2003) (citation and quotation marks omitted).  Tekie's argument on this point is therefore without merit.

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** Tekie's petition for review.