NOT RECOMMENDED FOR PUBLICATION
File Name: 05a0633n.06
Filed: July 28, 2005

No. 04-4091

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| DODA GOJCEVIC, LENA GOJCEVIC, and LEON GOJCEVIC, | ) ) ) | |
| Plaintiffs-Petitioners, | ) ) ) | ON PETITION FOR REVIEW OF A DECISION OF THE BOARD OF IMMIGRATION APPEALS |
| v. | ) ) | |
| ALBERTO GONZALES, ATTORNEY GENERAL, | ) ) ) | OPINION |
| Defendant-Respondent. | ) ) | |

Before: NELSON and GILMAN, Circuit Judges; and DONALD, District Judge.[*]

**BERNICE BOUIE DONALD, District Judge.** Doda Gojcevic ("Gojcevic"), Lena Gojcevic, and Leon Gojcevic (collectively "Petitioners") seek review of the Board of Immigration Appeals' ("BIA") decision affirming the denial of their requests for asylum and the withholding of removal under the Immigration and Nationality Act ("INA"), and for protection under the Convention Against Torture ("CAT"). For the reasons that follow, we **DENY** the petition for review.

## I. BACKGROUND

---

[*]The Honorable Bernice Bouie Donald, United States District Judge for the Western District of Tennessee, sitting by designation.

Petitioners are ethnic Albanians from Montenegro and are citizens of the country formerly known as Yugoslavia. In 1992, Petitioners attempted to enter the United States using passports that belonged to others. Petitioners were detained and subsequently conceded their excludability. On July 7, 1992, Petitioners applied for admission to the United States and later for asylum.

The Immigration and Naturalization Service ("INS") denied Petitioners' applications for admission. The INS referred their asylum requests to the Immigration Court. On October 20, 1993, an immigration judge ("IJ") denied Petitioners' applications for asylum and ordered them excluded to Yugoslavia. Petitioners timely appealed, notifying the BIA that an incomplete transcript of the Immigration Court proceedings was submitted to the BIA for its review. On April 12, 1994, based on the record before it, the BIA denied Petitioners' appeal.

Petitioners filed a timely motion to reopen on May 2, 1994. Petitioners asserted that the failure to provide a complete transcript made it impossible for them to file a brief on appeal. On June 17, 1999, while their motion to reopen was pending, Petitioners requested that they be allowed to file a claim under the CAT. The INS opposed the motion to file a claim under the CAT.

On February 12, 2001, the BIA granted Petitioners' motion to reopen their exclusion proceedings. The BIA remanded the case to the Immigration Court for preparation of a complete record. The IJ who originally heard Petitioners' case had retired, and the court could not recreate the record. The Immigration Court, therefore, conducted a new asylum hearing and heard testimony on Petitioners' applications.

Gojcevic testified that when he was in Yugoslavia, Serbian police stopped and searched him because he was Albanian. During one such stop, a police officer pilfered money from Gojcevic's

pockets. In 1984, Gojcevic served in the Yugoslav Army. During his service in the military, Gojcevic asserted that he was persecuted by fellow soldiers and his captain. Gojcevic maintained that he was treated badly because he was Albanian. Among the conduct that Gojcevic asserted was mistreatment were instances when he was required to perform extra cleaning duties and an instance in which he overheard Serbian soldiers threaten to kill him. Gojcevic reported the incident to his captain, who slapped him in the face and disregarded the complaint. Later that night, some Serbian soldiers beat Gojcevic. On another occasion, Gojcevic was imprisoned for two days because his superiors thought he had stolen military property.

Gojcevic was discharged from the military and served as a reservist for four or five months. In 1992, Gojcevic received a notice recalling him to military duty. Gojcevic fled to Albania with his wife, Lena, and his son, Leon, rather than report for military service. Gojcevic testified that he fled because he was afraid that he would have to go to Kosovo and Bosnia and kill innocent people. Members of the army and police went to the home of Gojcevic's parents to discover his whereabouts. To Gojcevic's knowledge, no such inquiries were made after 1996 or 1997. Gojcevic testified that he fears that he will be killed or imprisoned if forced to return to the former Yugoslavia. The IJ evaluated the testimony presented at the hearing, and on May 2, 2003, the IJ concluded that, although Petitioners were credible, they did not demonstrate past persecution or a well-founded fear of future persecution. The IJ reasoned that Petitioners' fear of persecution was not corroborated by the 2001 Country Report for Yugoslavia, which was offered into evidence and indicated that persons who had evaded the draft from April 27, 1993 to October 7, 2000, had received amnesty. Moreover, the IJ noted that the Country Report reflected that although some

societal discrimination and sporadic violence existed against ethnic Albanians, this did not equate to a pattern of persecution or torture against ethnic Albanians. The IJ denied Petitioners' applications for relief and ordered them deported to Yugoslavia.

Petitioners timely appealed to the BIA. Petitioners raised two issues on appeal: 1) whether the IJ erred in finding that Petitioners did not have a well founded fear of persecution, and 2) whether the IJ misapplied the law and abused his discretion by failing to grant Petitioners political asylum. On August 19, 2004, the BIA affirmed without opinion the decision of the IJ.

## II. JURISDICTION AND STANDARD OF REVIEW

The Court has jurisdiction to review Petitioners' administratively exhausted claims pursuant to 8 U.S.C. § 1105a(a), modified by section 309(c)(4) of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). Because the BIA affirmed the IJ's decision without opinion, the Court reviews the IJ's decision as the final agency order under the "substantial evidence" standard. Mullai v. Ashcroft, 385 F.3d 635, 638 (6th Cir. 2004) (citing Denko v. I.N.S., 351 F.3d 717, 730 (6th Cir. 2003)). The substantial evidence standard requires the Court to uphold the IJ's decision if it is "'supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" Id. (quoting Koliada v. I.N.S., 259 F.3d 482, 486 (6th Cir. 2001)). Moreover, we may not reverse "simply because [we are] convinced that [we] would have decided the case differently." Id. (quoting Adhiyappa v. I.N.S., 58 F.3d 261, 265 (6th Cir. 1995)). "Rather, in order to reverse the BIA's factual determinations, the reviewing court must find that the evidence not only supports a contrary conclusion, but indeed compels it." Id. (quoting Klawitter v. I.N.S., 970 F.2d 149, 152 (6th Cir. 1992)).

### III.  ANALYSIS

A.  <u>Asylum</u>

Petitioners bear the burden of establishing that they are refugees eligible for asylum either because they have suffered actual past persecution or because they have a well-founded fear of future persecution.  8 U.S.C. § 1101(a)(42)(A); 8 C.F.R. § 208.13(a); <u>I.N.S. v. Elias-Zacarias</u>, 502 U.S. 478, 481, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992).  If Petitioners demonstrate past persecution, they are entitled to a rebuttable presumption of a well-founded fear of future persecution. 8 C.F.R. § 1208.13(b)(1); <u>Mullai</u>, 385 F.3d at 638.  The government may overcome the presumption by establishing by a preponderance of the evidence that there is "a fundamental change in circumstances such that [Petitioners] no longer [have] a well-founded fear of persecution in [their] country of nationality. . . ."  8 C.F.R. § 1208.13(b)(1)(i)(A); <u>Mullai</u>, 385 F.3d at 638.  "The [government] must do more than show that circumstances in the country have fundamentally changed; the [government] must also show that such change negates the particular applicant's well-founded fear of persecution."  <u>Ouda v. I.N.S.</u>, 324 F.3d 445, 452 (6th Cir. 2003) (<u>citing</u> <u>Mikhailevitch v. I.N.S.</u>, 146 F.3d 384, 389 (6th Cir. 1998)).  Additionally, in the absence of a well founded fear of future persecution, an asylum applicant may be eligible for <u>Chen</u> humanitarian asylum, if the applicant establishes "compelling reasons for being unwilling or unable to return to [his or her] country arising out of the severity of the past persecution. . . ."  8 C.F.R. § 1208.13(b)(1)(iii)(A); <u>In re Chen</u>, 20 I&N. Dec. 16 (BIA 1989).

Substantial evidence supports the IJ's determination that Petitioners did not experience past persecution. The record indicates that Gojcevic was reactivated/drafted by the army, was forced to perform undesirable duties during his military service, was once beaten by fellow soldiers, was once jailed for allegedly stealing government property, and had his pockets pilfered once by a police officer.

"[R]efusal to perform military service in one's native country is not ordinarily a valid basis for establishing asylum eligibility. . . ." Vujisic v. I.N.S., 224 F.3d 578, 581 (7th Cir. 2000). In Vujisic, the Court determined that the applicant established that his refusal to enter the Yugoslavian Army, coupled with his treatment and his family's treatment, were sufficient to establish past persecution. Id. The court noted that "in some cases, refusal to enter the army may render one a refugee if[,] for instance, the reason for refusal is a 'genuine political, religious or moral conviction or to valid reasons of conscience.'" Id. (quoting Handbook on Procedures and Criteria for Determining Refugee Status, United Nations High Commissioner for Refugees ¶ 170 (Geneva 1979)). Moreover, if the "military action with which an individual does not want to be associated, is condemned by the international community as contrary to basic rules of human conduct, punishment for desertion or draft evasion could . . . in itself be regarded as persecution." Id. (citation omitted). The Vujisic Court determined that the applicant established persecution because he refused to participate in the fight against Slovenia based on his opposition to political and nationalistic policies of the Yugoslav government. Id. The court reasoned that because of his refusal, his family, particularly his father, was subjected to arrest and punishment, and as such, the applicant's fear of future persecution was well founded. Id.

In the instant case, Gojcevic asserted that he evaded military service because he opposed the government's actions in Bosnia and Serbia and he did not want to take part in ethnic cleansing. Thus, Gojcevic had a political opinion contrary to the Yugoslav government. However, he did not demonstrate that he was persecuted as a result of his political opinion. Gojcevic evaded the draft and fled the country. After leaving, military officials went to his family's home and questioned them about his whereabouts. Gojcevic did not assert, however, that his family had been persecuted as a result of his evasion. Moreover, Gojcevic testified that he was not aware of anyone questioning his family about his location after 1996 or 1997. Unlike the facts in <u>Vujisic</u>, Petitioners did not establish that the Yugoslavian officials singled out Gojcevic for persecution above that of other draftees and deserters because of his Albanian background. Gojcevic's evasion of the draft is not sufficient evidence, therefore, to establish that he was persecuted.

Likewise, the treatment Gojcevic received during his service in the military is not sufficient to establish past persecution. A single beating is insufficient to establish past persecution. <u>See</u> <u>Gumbol v. I.N.S.</u>, 815 F.2d 406, 412-13 (6th Cir. 1987); <u>Gjokic v. Ashcroft</u>, 104 Fed. Appx. 501, 505 (6th Cir. 2004) (stating that "while even a single beating offends one's sense of civilized governmental conduct, a single beating does not compel a finding of persecution, which is the inquiry here."). Moreover, Gojcevic did not indicate the extent of the beating or whether he required medical treatment. Gojcevic did testify that he was jailed while in the military. He contended that it was because he was Albanian. Gojcevic testified, however, that he was arrested and held for two days while his commander investigated his suspicion that he had stolen part of a rifle. Thus, it is questionable that his detention stemmed from his Albanian ethnicity. Moreover, this one-time

confinement does not rise to the level of past persecution. See Gjokic, 104 Fed. Appx. At 505-06 (determining that a one-time detention following participation in political demonstration did not compel a finding of persecution). With respect to his military reactivation, the IJ determined that there was no evidence that Gojcevic was recalled because he was Albanian. Instead, as the IJ noted, Gojcevic's own cousin testified that there was a shortage of soldiers.

Finally, Gojcevic asserted that many years before coming to the United States he was once stopped by a police officer who pilfered his pockets. "[H]arassment or discrimination without more does not rise to the level of persecution." Mikhailevitch, 146 F.3d at 390. "'[P]ersecution' 'requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." Id. Thus, the police actions alleged in the instant case are insufficient to establish persecution. Accordingly, the evidence did not support a finding of past persecution. As such, Petitioners are not entitled to a presumption that they have a well-founded fear of future persecution nor are they entitled to humanitarian asylum. See 8 C.F.R. § 1208.13(b)(1).

Absent a showing of past persecution, the applicant must establish that 1) he has a well-founded fear of persecution "on account of race, religion, nationality, membership in a particular social group, or political opinion," 2) a reasonable probability exists that he will suffer future persecution if removed to the country, and 3) he is "unable or unwilling to return to that country because of such fear." Mikhailevitch, 146 F.3d at 389. "An applicant's fear of persecution must be both subjectively genuine and objectively reasonable." Id. An applicant must, therefore, "actually fear that he will be persecuted upon return to his country, and he must present evidence

establishing an 'objective situation' under which his fear can be deemed reasonable." Id. (quoting

Perkovic v. I.N.S., 33 F.3d 615, 620-21 (6th Cir. 1994)).

Petitioners assert that Gojcevic's potential punishment for refusing to commit genocide by

serving in the Yugoslav military is sufficient to establish that they have a well founded fear of future

persecution. However, "the existence of a military draft and punishment for avoiding the draft are

not persecution." Ujkic v. Ashcroft, 107 Fed. Appx. 560, 562 (6th Cir. 2004) (citing Mojsilovic v.

I.N.S., 156 F.3d 743, 747 (7th Cir. 1998)). Moreover, when discussing the applicant's refusal to

commit genocide, the Mojsilovic Court determined that "it is the *punishment* for refusing to serve

in an internationally condemned military--not the mere summons to serve-- that constitutes

persecution." Mojsilovic, 156 F.3d at 747 (emphasis in original). "Therefore, when an [applicant]

does not wish to be associated with a military that engages in universally condemned act of violence,

'the only relevant factor is the likelihood that the [applicant] will be punished.'" Id. (citation

omitted).

The IJ recognized that the 2001 Country Report on Human Rights Practices, released by the

Bureau of Democracy, Human Rights, and Labor, noted that a government law requiring military

service was enforced only sporadically and there were no forced conscriptions during the year. The

2001 Country Report further indicated that objectors and persons who evaded the draft between

April 27, 1992 and October 7, 2000 were not subject to fear of arrest pursuant to an amnesty law.

The Report contained similar remarks related specifically to Montenegro.

Petitioners assert that Gojcevic received his draft notice on April 5, 1992, twenty-two days

before the formal amnesty date began, and as such, it is questionable whether Gojcevic would be

eligible for amnesty. Petitioners did not present substantial evidence to establish, however, that persecution is likely to occur. Gojcevic's cousin, who served in the Yugoslavian Army, testified that he did not know of any Albanian who avoided military service and was punished as a result. Moreover, as this Court has previously observed, "[a]ccording to the State Department, ethnic Albanians are treated relatively well in Montenegro. . . ." Gjokic, 104 Fed. Appx. at 505-06. Thus, changed country conditions negate Petitioners' assertions that they have a well-founded fear of future persecution. We conclude, therefore, that substantial evidence supports the IJ's determination that Petitioners do not have a well-founded fear of future persecution. Accordingly, the Court holds that substantial evidence supports the IJ's determination that Petitioners are not entitled to asylum.

B. Withholding of Removal

The Court must "uphold the BIA's determination against withholding the removal of an alien, unless it is 'manifestly contrary to the law.'" Castellano-Chacon v. I.N.S., 341 F.3d 533, 552 (6th Cir. 2003) (quoting Ali v. Reno, 237 F.3d 591, 596 (6th Cir. 2001)). Moreover, "all administrative findings of fact are 'conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary.'" Id.

To qualify for withholding under the INA, an applicant must demonstrate that there is a clear probability that he would be subject to persecution if he were returned to the country he fled "because of [his] race, religion, nationality, membership in a particular social group, or political opinion." Id. at 545 (quoting 8 U.S.C. § 1231(b)(3)(A)). Thus, the applicant must establish that "it is more likely than not that he or she would be persecuted" based on one of the five factors. 8 C.F.R. § 208.16(b)(2). The burden of proof for establishing persecution for withholding purposes under

the INA is clear probability, which is a more burdensome standard than the asylum standard of a reasonable possibility. Castellano-Chacon, 341 F.3d at 545.

As discussed above, substantial evidence existed for the IJ to conclude that Petitioners did not establish that a reasonable possibility existed of future persecution. Given that the burden of proof for establishing that Petitioners would be persecuted is greater for withholding, the evidence supports the IJ's and BIA's determination that Petitioners failed to demonstrate their eligibility for withholding of removal pursuant to the INA.

An applicant seeking withholding of removal pursuant to the CAT must establish "that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 208.16(c)(2). Unlike asylum and withholding of removal under the INA, pursuant to the CAT, an applicant need not show that the torture is based on one of the five specified factors. Castellano-Chacon, 341 F.3d at 545.

Torture is defined as:

any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 1208.18(a)(1). The applicant must establish that it is more likely than not that he would be tortured in the proposed country of removal and that a public official or other person acting in an official capacity would inflict, instigate, or consent to the torture or fail to intervene in the torture.

8 C.F.R. §§ 208.16(c)(2) and 1208.18(a)(1), (7). To determine whether the applicant is eligible for

withholding of removal under the CAT,

> all evidence relevant to the possibility of future torture shall be considered, including, but not limited to:
>
> (i) Evidence of past torture inflicted upon the applicant;
>
> (ii) Evidence that the applicant could relocate to a part of the country of removal where he or she is not likely to be tortured;
>
> (iii) Evidence of gross, flagrant or mass violations of human rights within the country of removal, where applicable; and
>
> (iv) Other relevant information regarding conditions in the country of removal.

8 C.F.R. § 1208.16(c)(3)(i)-(iii).

The IJ determined that the 2001 Country Report and the testimony of Gojcevic's cousin

established that individuals who evaded the draft are not being tortured and that no pattern or

practice of torture of ethnic Albanians exists in Montenegro. Based on the improved country

conditions as evidenced by the 2001 Country Report, the IJ's determination that Petitioners failed

to establish that it was more likely than not that they would be persecuted or tortured if returned

anywhere in Yugoslavia is not manifestly contrary to the law. Accordingly, the Court holds that the

IJ did not err in denying Petitioners' applications for withholding of removal pursuant to the INA

and the CAT.

C.      Delay in Adjudication and Repapering

Petitioners assert that the Immigration Court's long delay in adjudicating their case

prejudiced their ability to present their asylum claim. Additionally, Petitioners assert that the IJ

improperly rejected their request for repapering.  Section 1252(d)(1), Title 8 of the United States

Code provides:

> A court may review a final order of removal only if--
>
> (1) the alien has exhausted all administrative remedies available to the alien as of right, and
>
> (2) another court has not decided the validity of the order, unless the reviewing court finds that the petition presents grounds that could not have been presented in the prior judicial proceeding or that the remedy provided by the prior proceeding was inadequate or ineffective to test the validity of the order.

8 U.S.C. § 1252(d)(1).  "It is proper for an appellate court to consider waived all issues not raised

in an appellant's briefs, even if the issue has been raised in the notice of appeal."  Ramani v.

Ashcroft, 378 F.3d 554, 558 (6th Cir. 2004) (citing Farm Labor Organizing Comm. v. Ohio State

Highway Patrol, 308 F.3d 523, 528 n. 1, 544 n. 8 (6th Cir. 2002)).  Neither Petitioners' notice of

appeal to the BIA, nor their appeal brief, advanced either the argument that the long delay in

adjudicating their case prejudiced their ability to present their asylum claim or that they were

entitled to repapering.  Accordingly, this Court does not have jurisdiction to review these claims.

### III.  CONCLUSION

For all of the reasons set forth above, we **DENY** the petition to review the decision of the

BIA.