**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 09a0617n.06

No. 08-3969

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Aug 27, 2009**
LEONARD GREEN, Clerk

NIKOLAY RUDZEVICH,            )
                                       )
     Petitioner,                )    ON PETITION FOR REVIEW FROM A
                                       )    DECISION OF THE BOARD OF
v.                             )    IMMIGRATION APPEALS
                                       )
ERIC H. HOLDER, JR., Attorney General,   )
                                       )
     Respondent.              )

Before: COLE and COOK, Circuit Judges; COHN, District Judge.[*]

COOK, Circuit Judge. Nikolay Rudzevich, a native and citizen of Russia, petitions us to review a Board of Immigration Appeals ("BIA") decision that affirmed the Immigration Judge's ("IJ") denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We deny the petition.

I.

Rudzevich entered the United States in May 2004. Instead of departing when his visa expired in September, he sought asylum on the grounds that he feared religious persecution from Russian

---

[*]Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation.

nationalists. The Department of Homeland Security ("DHS") charged him as removable for overstaying his visa, *see* 8 U.S.C. § 1227(a)(1)(B), and he conceded removability.

Rudzevich attached an affidavit to his asylum application, alleging eleven occasions when "nationalists and Neo-fascists" persecuted him over the two-and-a-half-year period before he graduated from the Elektro-Technical University in St. Petersburg. The detailed accounts—often quoting his assailants verbatim—included seven physical confrontations, a detention without charges by Russian police, and a series of threatening letters. But Rudzevich attached scant documentary support: a copy of his Russian passport, two medical records from September 2001, and the State Department Country Report for Russia, which reported that "[t]he Constitution provides for freedom of religion, and the Government generally respected this right in practice."

Rudzevich filed two sets of exhibits, including various reports on religious tolerance in Russia, and presented evidence that he attended a Baptist church. He also submitted a letter from his mother, averring that her son had been persecuted, that she had seen him bloodied in September 2001, and that he "was beaten several times." Rudzevich's friend, Alexander Golyka, corroborated an October 2003 incident when five skinheads confronted the men on a train returning to St. Petersburg, hit Rudzevich, and threatened to throw Golyka off the train. But Rudzevich did not proffer evidence of any other incidents. These omissions are striking; for instance, he claims that he sought medical attention after three attacks, but the medical reports that he offered related only

to the September 2001 claim. He likewise failed to produce copies of any literature that he distributed, or of any threatening letters.

The IJ concluded that Rudzevich was not credible and had embellished his testimony. The IJ also found that the evidence corroborated only three claims: two physical attacks and the October 2003 train incident.[1] Considering only these incidents, the IJ found that Rudzevich established neither past persecution nor a well-founded fear of future persecution, and consequently fell short of the statutory definition of a "refugee" eligible for asylum. *See* 8 U.S.C. § 1101(a)(42); 8 U.S.C. § 1158(b)(1)(A). On appeal, the BIA adopted and affirmed the IJ's decision, noting that Rudzevich failed to persuade the Board that the IJ clearly erred in its adverse credibility determination.

II.

Where the BIA adopts an IJ's decision with additional commentary, we review both orders. *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). The IJ's findings of fact—including adverse credibility findings—are conclusive unless a reasonable fact finder would be compelled to conclude to the contrary. 8 U.S.C. § 1252(b)(4)(B); *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). We will not disturb an IJ's finding that a petitioner failed to corroborate his claims unless "a reasonable trier

---

[1]In fact, the record suggests that the two medical reports, both from September 2001, corroborate the same attack. We need not address this inconsistency, however, because the IJ's conclusions and bases for those conclusions are clear, and there is no reason to believe that its resolution would lead to a different result. *See Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005).

of fact is compelled to conclude that such corroborating evidence is unavailable." 8 U.S.C. §

1252(b)(4); *Shkabari*, 427 F.3d at 331 n.2.

## A. Credibility

Rudzevich attacks the IJ's underlying credibility and corroboration findings, reasoning that

those errors tainted the IJ's decision about eligibility for asylum. We turn first to the IJ's credibility

analysis.

In concluding that Rudzevich "greatly embellished his claims," the IJ identified five

credibility-impugning factors: (1) Rudzevich's testimony was "extremely vague and presented

evidentiary gaps"; (2) his testimony "was not detailed and comprehensive like his affidavit"; (3) his

testimony was "evasive" and "his demeanor was not convincing"; (4) his testimony was inconsistent

with the 2005 State Department Report; and (5) his decision to remain in Russia to complete his

degree "does not reconcile easily" with claiming persecution. The IJ held that these factors,

considered together, doomed Rudzevich's claim. Rudzevich challenges that holding by attacking

some of the underpinning factors independently.

First, he counters that it is "literally impossible to examine whether the . . . decisions are

supported by substantial evidence" because the IJ did not specify which testimony was vague,

inconsistent, or evasive. But the IJ *did* express specific concerns:

> For instance, he was very vague regarding his decision to become a Baptist while in college and his personal and familial religious history. In addition, he was not specific regarding his various confrontations with Russian nationalists who allegedly taunted him.

And to the extent that Rudzevich claims that the IJ did not give him an opportunity to respond more specifically, the record belies his argument. The IJ and the government attorney addressed Rudzevich with open-ended questions and presented him with ample opportunity to tell his story, yet he routinely gave terse, minimally-informative answers:

> Q.    How did you become a Baptist? Tell me about that.
>
> A.    I took a brochure from members of the church that they were standing next to the subway station and disseminating brochures.
>
> Q.    Where – what – you said you – where were you at at [sic] the time?
>
> A.    I lived in St. Petersburg and I studied at the university.
>
> Q.    Okay, what – who gave you this brochure? Tell me about it.
>
> A.    There were two people, a man and a woman, and I took a brochure from the woman.
>
> Q.    Okay. Did you – I mean, did you know anything about the Baptist church prior to taking that brochure?
>
> A.    No.
>
> . . .
>
> Q.    You said you didn't know anything about the Baptist church. Somebody hands you a brochure, you decide to go, is that correct?
>
> A.    Yes.

This brusque testimony confirms the IJ's observations. Our review of the record reveals nothing that would compel a reasonable fact finder to reach a contrary conclusion.

Second, Rudzevich complains that the IJ erred by accepting generalizations from the State Department's report on Russia to discredit his testimony concerning specific instances of persecution. *See Mece v. Gonzales*, 415 F.3d 562, 574 n.5 (6th Cir. 2005); *Zheng v. Ashcroft*, 397 F.3d 1139, 1143 (9th Cir. 2005). But the record does not show such exclusive reliance; the IJ instead appeared to examine a variety of sources, acknowledging that "there apparently continues to be instances of unequal treatment." Moreover, the country report was only one of five factors that the IJ cited as undermining Rudzevich's testimony. The IJ properly considered the State Department report as "generally the best source of information on conditions in foreign nations," *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004), and when relied upon in concert with the other factors, the report constitutes substantial evidence supporting the IJ's adverse credibility finding. *See Sterkaj v. Gonzales*, 439 F.3d 273, 276 (6th Cir. 2006).

Third, Rudzevich contests the IJ's reliance on his having "delayed" leaving Russia to complete his degree. This court, he insists, cannot rely on that determination because the IJ did not ask Rudzevich if he could have left sooner; yet the record of the hearing depicts opportunities to have explained. On appeal, Rudzevich's brief claims only that he could not obtain a U.S. visa earlier; he does not address whether he could have fled sooner for other safe havens. That explanation would not compel a reasonable factfinder to reach a conclusion contrary to the IJ's. Regardless, we observe that this was one of five grounds for the IJ's ruling.

Fourth, Rudzevich contends that the IJ's findings pertaining to his demeanor lack substantial evidentiary support because "the IJ made no reference to anything about Mr. Rudzevich's demeanor." But the IJ offered a specific explanation—that Rudzevich's answers "appeared rehearsed." Written transcripts rarely reflect a witness's demeanor, and so we accord the IJ's observations deference on review. *Diallo v. Holder*, 312 F. App'x 790, 801 (6th Cir. 2009) ("The IJ is in the best position to determine credibility based on the demeanor of the witness and the presentation of testimony.").

Rudzevich does not even respond to the IJ's observation that differences between his affidavit and live testimony undermined his credibility. Rudzevich's affidavit presented an evocative, detailed narrative:

> I came to the United States on May 15, 2004. I cannot go back to Russia. I am afraid that if I had to go back there, nationalists and Neo-fascists would cripple or kill me sooner or later. They hate everything that does not fit in the limits of their chauvinistic ideology. Nowadays, Orthodox Church obtained great strength in Russia. They always treated negatively religious minorities. All Evangelical Christians are sectarians according to their words. That is what they teach their parishioners. Besides nationalists, who actively persecute Jews, Caucasians and people of non-Orthodox orientation, ordinary people also maltreat the religious Protestants, considering them "devil's breed".

His testimony paled in comparison:

> Q.     . . . . Sir, why are you fleeing – why do you not want to go back to Russia?
>
> A.     I fear for my life and for my sister's life.
>
> Q.     Okay, sir, why are you afraid for your life and for your sister's life?

> A. Because I was beaten and threatened and my sister the same way, was treated the same way.
>
> Q. Okay. Why?
>
> A. Because of my religion.

The record is replete with these contrasts; Rudzevich's affidavit goes on for six pages and his account of each attack details precise quotes and, often, his assailants' clothing. His testimony, however, is little more than a litany of memorized dates and injuries.

Reviewing the record and the same factors as the IJ, we cannot conclude that a reasonable fact finder would be compelled to disagree with the IJ's adverse credibility finding.

## B. Corroboration

Where it is reasonable for an IJ to expect corroborating evidence, "[t]he absence of such corroborating evidence can lead to a finding that an applicant has failed to meet [his]burden of proof." *Kolaj v. Holder*, 311 F. App'x 807, 812 (6th Cir. 2009) (quoting *Dorosh v. Ashcroft*, 398 F.3d 379, 382–83) (6th Cir. 2004)). An alien who cannot corroborate testimony may prove ineligible for asylum, and "evidentiary gaps" may constitute substantial evidence supporting an IJ's denial of relief. *See Chen v. U.S. Dep't of Justice*, 434 F.3d 144, 159 n.13 (2d Cir. 2006).

The IJ determined that Rudzevich corroborated only that he "was physically injured on two occasions and experienced an incident on the train." We must discern whether a reasonable trier of

fact, reviewing Rudzevich's explanations, would be compelled to conclude that corroborating evidence was unavailable for the other incidents.

The IJ noted that substantial evidentiary gaps exist:

> The gravamen of Rudzevich's claims is that he was attacked for proselytizing and distributing religious literature. Despite the gravity of this claim, he offers very little evidence to substantiate it. For instance, he proffered no literature that he claims to have circulated; he offers no testimony from independent sources that say he disseminated any religious literature; he provides no affidavit from any person or entity swearing by personal knowledge that he distributed religious literature. Except for the incident on the train, the record is simply bereft of objective corroborating evidence.

Rather than explain these gaps, Rudzevich responds that the IJ saddled him with an unlawful burden of corroboration. He emphasizes that the IJ must apply a three-part test: (1) inquiring whether it is reasonable to expect the alien to produce specific corroboration; (2) providing a chance for the alien to explain why corroboration is unavailable; and (3) evaluating the reasonableness of the alien's explanation. But our review confirms that the IJ complied with those requirements; the IJ gave Rudzevich ample opportunity to explain the lack of evidence and reasoned through those responses before deeming them inadequate.

Rudzevich maintains that his explanations were reasonable, but they do not compel a fact finder to conclude that corroborating evidence was unavailable. *See* 8 U.S.C. § 1252(b)(4). For instance, he explains that his mother sought to obtain other medical records, but the hospital would not release them to her. While plausible, that does not compel the conclusion that he could not

obtain the documents some other way, such as by providing the requisite authorization. Rudzevich possessed some ability to procure records, since he obtained the documentation from September 2001. His explanation that he "threw away" the threatening letters and copies of the literature he purportedly distributed is likewise unpersuasive. In both cases, Rudzevich defaulted to the same response: the police would not help him, so he discarded them. That response—the only explanation for those significant evidentiary gaps—is not so convincing as to compel a reasonable fact finder to conclude that corroborating evidence was unavailable. We will not disturb the IJ's corroboration finding.

### III.

Rudzevich cannot qualify for asylum unless he is a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A). A refugee is a person who "is unable or unwilling to avail himself . . . of the protection of his [home] country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion . . . ." *Id*. Because we leave undisturbed the IJ's adverse credibility and corroboration findings, we examine only those events that Rudzevich corroborated in determining whether he is a "refugee."

Rudzevich's claims do not demonstrate past persecution. "[P]ersecution is an extreme concept that does not include every sort of treatment that our society regards as offensive." *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004) (quoting *Ghaly v. INS*, 58 F.3d 1425, 1431 (9th Cir.

1995)). Mere "[h]arassment or discrimination without more does not rise to the level of persecution." *Id.* (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 389–90 (6th Cir. 1998)).

Rudzevich's evidence of past persecution suggests sporadic harassment and, at most, two attacks undertaken by private individuals. He offers no indication that the Russian government condoned these attacks, or that it cannot protect him. As this court acknowledges:

> It is not sufficient that the applicant has been subjected to indiscriminate abuse, such as physical force or violence employed against a crowd of demonstrators, or has been the victim of a random crime. Instead, the applicant must establish that he or she was *specifically targeted by the government for abuse* based on one of the statutorily protected grounds.

*Gilaj v. Gonzales*, 408 F.3d 275, 285 (6th Cir. 2005) (emphasis added). Under the circumstances, Rudzevich's sufferings are not so extreme as to qualify as past persecution. *See, e.g.*, *Lumaj v. Gonzales*, 462 F.3d 574, 577 (6th Cir. 2006) (a beating, without detention and no sign that the attack was more than a random criminal act, did not constitute persecution); *Dandan v. Ashcroft*, 339 F.3d 567, 573–74 (7th Cir. 2003) (multi-day detention, deprivation of food and water, beatings, and interrogations did not compel finding past persecution).

Because Rudzevich cannot show past persecution, he is not entitled to a presumption that he will suffer future persecution if he returns to Russia. *See* 8 C.F.R. § 208.13(b)(1). Instead, he must establish a well-founded fear of persecution—a showing that requires an objective and subjective component. *Pilica v. Ashcroft*, 388 F.3d 941, 950 (6th Cir. 2004). He "must actually fear that he

will be persecuted upon return to his country, and he must present evidence establishing an 'objective situation' under which his fear can be deemed reasonable." *Id.*

We agree with the IJ's conclusion that Rudzevich did not satisfy the objective component insofar as "he has not presented objectively reasonable evidence that he would be singled out for mistreatment." Significantly, the three incidents occurred sporadically over a two-and-a-half-year period; such intermittent harassment does not create a reasonable expectation of future persecution. *See Gojcevic v. Gonzales*, 142 F. App'x 257, 261–62 (6th Cir. 2005) (IJ properly found that sporadic mistreatment failed to establish past persecution). Moreover, Rudzevich did not show that he could not avoid future harassment by moving within Russia. The ability to move elsewhere within one's own country counsels against finding a well-founded fear of persecution. And here, the State Department's report for Russia supports that possibility by noting that human rights violations are not widespread. Consequently, Rudzevich falls short of establishing eligibility for asylum and necessarily cannot meet the more demanding standard for withholding of removal. *See Mullai*, 385 F.3d at 639 ("Because the lesser standard for establishing asylum eligibility eludes Mullai, we conclude that she cannot meet the more stringent requirements for withholding of removal.").

IV.

We deny the petition for review.