**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0091n.06

**No. 09-3404**

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

|                          |     |                              |
|--------------------------|-----|------------------------------|
| SERGEY VASILEV,          | )   | **FILED**                    |
|                          | )   | **Feb 16, 2010**             |
| Petitioner,              | )   | LEONARD GREEN, Clerk         |
|                          | )   |                              |
| v.                       | )   | ON PETITION FOR REVIEW       |
|                          | )   | OF AN ORDER OF THE           |
| ERIC H. HOLDER, JR.,     | )   | BOARD OF IMMIGRATION         |
|                          | )   | APPEALS                      |
| Respondent.              | )   |                              |
|                          | )   |                              |

BEFORE: MARTIN, ROGERS, and McKEAGUE, Circuit Judges.

ROGERS, Circuit Judge. Sergey Vasilev, a Russian-born citizen of Krygyzstan, petitions for review of a Board of Immigration Appeals decision denying him asylum, withholding of removal, and protection under the Convention Against Torture. Vasilev asserts in his petition that the Immigration Judge and Board of Immigration Appeals erred in determining that two racially motivated attacks against him by ethnic Kyrgyz individuals and the failure of police to apprehend the attackers did not establish persecution by persons the government of Kyrgyzstan was unable or unwilling to control. The asylum petition was untimely. With respect to withholding of removal, moreover, substantial evidence supports the determinations of the IJ and the BIA that Vasilev had not established past persecution in Kyrgyzstan and that Vasilev could not meet his burden of establishing a clear probability of future persecution. There is accordingly no basis for overturning the BIA decision.

Vasilev claims that while living in Kyrgyzstan he was subject to discrimination and persecution by ethnic Kyrgyz persons on account of his Russian origins. Before the IJ, Vasilev testified that he was attacked on account of his Russian ethnicity on two occasions, once in 1998 and again in 1999. In the first attack, Vasilev was approached in the early evening by three "young guys" of Asian descent who asked him for a cigarette. When Vasilev, who speaks Russian, responded that he did not speak the Kyrgyz language, the individuals threatened him, said that he should leave their country, and called him a "damn occupant" and a "Russian invader." As he was being insulted, one of the individuals hit Vasilev on the head and an altercation followed, during which Vasilev was stabbed several times with a knife. The attackers left Vasilev lying in the street until somebody called an ambulance. Vasilev spent two or three days in the hospital, and he contacted the police during this time. An investigator from the police visited Vasilev in the hospital on February 12, 1998, and filed paperwork opening an official criminal investigation. According to the investigator's report, the police concluded that there was sufficient evidence that a crime had occurred and the investigator decided to establish an official criminal case, take control of the criminal investigation, and notify the local district attorney. Vasilev testified that the police officer investigating the case was an ethnic Kyrgyz and as far as Vasilev knew, nothing was ever done about the case.

In October of 1999, Vasilev was again attacked on the streets. Vasilev testified that several men approached him under circumstances similar to the first attack. When the individuals began to insult Vasilev and call him an invader and a foreigner, Vasilev responded in a way that "wasn't very polite," and a fight broke out. During the fight, Vasilev was hit several times with an unknown

object and he eventually received a concussion. There were several witnesses to the fight, including some Russian women who began to scream, but nobody attempted to intervene. Vasilev once again received treatment at the hospital, where an investigator from the police interviewed Vasilev and began an investigation. The investigator made a report, but when Vasilev tried later to follow up about his case after nobody was arrested, the police told him that he "should just leave it alone."

In addition to his testimony about these two attacks, Vasilev stated that he experienced difficulty as a result of his Russian nationality the entire time he lived in Kyrgyzstan. He testified that in the months following the second attack before he left the country, there were problems for him every day. When asked what kinds of problems he had, Vasilev testified that documents were delayed, that he received denials of requests regarding "different issues," and that it took him six months to get a passport when the process usually took two weeks. He further testified that since he left the country for the United States in 2000, his family and friends who had remained in Kyrgyzstan told him that the situation had gotten worse, and he also claimed to have seen media reports of "some kind of revolt by Russians" in which "quite a few" Russians were killed. Vasilev testified that if he returned to Kyrgyzstan, he thought that he would either have to leave or he would be killed by the local population.

The IJ found Vasilev's testimony to be credible, but held that Vasilev was ineligible for asylum and denied Vasilev's application for withholding of removal and protection under the CAT. Because Vasilev arrived in the United States on March 1, 2000, but did not apply for asylum until March 22, 2001, the IJ held that Vasilev was time barred from filing an application for asylum. The

IJ further held that Vasilev had not shown "that the harm inflicted on [him] was by the government or government sponsored, or was carried out by individuals who the government is unable or unwilling to control." In classifying the violence against Vasilev as street crime, the IJ reasoned that while there was evidence of discrimination against ethnic Russians in Kyrgyzstan, there was no indication that the government sponsored or condoned the actions of Vasilev's attackers, and when Vasilev reported his attacks to the police, the police took official action in documenting the incidents and opening investigations. The IJ stated that the fact that police never apprehended the people responsible for either attack did "not equate to government inaction in its entirety." The IJ thus determined that Vasilev had failed to establish past persecution and further determined that because Vasilev had failed to establish a clear probability of future persecution, he was not eligible for withholding of removal. The IJ also denied Vasilev's request for relief under the CAT after determining that there was no evidence in the record that the "government would acquiesce in or be complicit in any act of torture that might be alleged to befall [Vasilev] upon his return to the country."

The BIA issued an opinion affirming the IJ's decision in all respects. As to the statutory untimeliness of Vasilev's application for asylum, the BIA rejected Vasilev's arguments, made for the first time on appeal, that extraordinary circumstances justified the allowance of his application because his previous counsel promised to file his application but failed to do so. The BIA also affirmed the IJ's conclusion that the attacks against Vasilev did not constitute past persecution because Vasilev had failed to demonstrate that the government of Kyrgyzstan was unable or

unwilling to protect Vasilev from such attacks. Finally, the BIA affirmed the IJ's determination that Vasilev was not entitled to relief under the CAT. Vasilev filed this timely petition for review.

Because Vasilev has not addressed the issue of the statutory bar to his application for asylum or the BIA's denial of his request for relief under the CAT in his petition to this court, he has waived those issues. *See Shkabari v. Gonzales*, 427 F.3d 324, 327 n.1 (6th Cir. 2005). Even if Vasilev had raised the issue of the untimeliness of his application for asylum, this court's jurisdiction over that issue is limited to constitutional claims or claims involving statutory interpretation, *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009), and no such issues have been raised. Therefore, the only issue before this court is whether substantial evidence supports the BIA's determination that Vasilev is not entitled to withholding of removal.

In order to meet his burden of showing before the agency that he is entitled to withholding of removal, Vasilev had to establish a clear probability of persecution, meaning it was more likely than not that Vasilev would be persecuted if he returned to Kyrgyzstan. *See Al-Ghorbani v. Holder*, 585 F.3d 980, 994 (6th Cir. 2009). Here, Vasilev attempted to meet that burden by establishing past persecution by persons the government of Kyrgyzstan was unable or unwilling to control, or by showing a pattern or practice of persecution against ethnic Russians in Kyrgyzstan. Because Vasilev could show neither that the attacks against him were committed by persons the government was unwilling or unable to control nor that ethnic Russians are subject to a pattern or practice of persecution in Krygyzstan, the IJ and the BIA properly determined that Vasilev is not entitled to withholding of removal.

Vasilev could not establish past persecution because he failed to show that the attacks against him were made by individuals the government was unable or unwilling to control. "The regulations governing the withholding of removal . . . [provide] that when 'the applicant is determined to have suffered past persecution in the proposed country of removal on account of [a protected ground], it shall be presumed that the applicant's life or freedom would be threatened in the future in the country of removal on the basis of the original claim.'" *Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 (6th Cir. 2006) (quoting 8 C.F.R. § 208.16(b)(1)(i)). Persecution is "the infliction of harm or suffering by the government, or persons the government is unwilling or unable to control, to overcome a characteristic of the victim." *Khalili v. Holder*, 557 F.3d 429, 436 (6th Cir. 2004). Here, Vasilev claimed that he was attacked twice and that his ethnicity was the motivating factor in both of those attacks. We have held previously that an individual who suffered harassment and two attacks by private individuals did not establish past persecution when the individual offered "no indication that the [] government condoned these attacks, or that it cannot protect him." *Rudzevich v. Holder*, 344 F. App'x 201, 207 (6th Cir. 2009). Vasilev argues that because the police who investigated the attacks were also ethnic Kyrgyz and the attackers were never arrested, the government was complicit in his persecution. However, the record shows that each time Vasilev was insulted and later attacked on the street, a member of the police went to the hospital, opened an investigation of the event, and notified the local district attorney. That the police failed to apprehend the attackers did not compel the conclusion that the government was unwilling or unable to control violence against ethnic Russians.

As Vasilev sees it, the Ninth Circuit's decision in *Singh v. INS*, 94 F.3d 1353 (9th Cir. 1996), supports the conclusion that the failure of the police to apprehend the attackers shows that the government condoned and encouraged the harassment and violence Vasilev experienced. In that case, the Ninth Circuit held that a family of ethnic Indian citizens of Fiji had established past persecution by persons the government was unwilling or unable to control when the family experienced several episodes of violence perpetrated by ethnic Fijians and the ethnic Fijian police failed to take any action. *Id.* at 1361. However, the evidence of police inactivity in *Singh* was much greater than in the present case; the police took no action to investigate the violence in *Singh* despite the fact that the victim reported each attack to the police and even provided the names of his attackers. *Id.* at 1358. Here, by contrast, the only identifying information Vasilev was able to provide to police was the fact that the attackers were of Asian descent. Moreover, the record in *Singh* was replete with evidence of official persecution against Indo-Fijians by the government of Fiji, which had recently taken power through a series of coups designed to regain "Fiji for the Fijians," and the record also contained evidence of commonplace brutal attacks and episodes of violence against Indo-Fijians. *Id.* at 1357. Substantial evidence supports the determinations of the IJ and BIA that Vasilev had not established past persecution.

Having failed to show clear probability of future persecution by establishing past persecution, Vasilev next argues that ethnic Russians are subject to a pattern or practice of persecution by ethnic Kyrgyz. The Government responds that Vasilev waived this argument by failing to present it before the IJ and the BIA. The law requires that an applicant exhaust all administrative remedies prior to

appealing a final order of removal to a federal court. 8 U.S.C. § 1252(d)(1). We have held that this exhaustion requirement applies not only to avenues of appeal, but also to claims presented on appeal. *Ramani v. Ashcroft*, 378 F.3d 554, 559-60 (6th Cir. 2004). Before the IJ, Vasilev did present evidence of discrimination against ethnic Russians in Kyrgyzstan in an attempt to show that the government was unable or unwilling to control ethnic Kyrgy people who persecuted ethnic Russians, and to show that Vasilev would be persecuted if he returned to Russia. Although he never specifically mentioned a pattern or practice of persecution, Vasilev argued before the BIA that the "Immigration Judge erred in finding that the respondent did not establish a well-founded fear of persecution in the future . . . ." Even if we assume that this was sufficient to preserve Vasilev's pattern and practice argument for appeal, Vasilev is not entitled to withholding of removal based on a pattern or practice of persecution against ethnic Russians because he has not presented evidence sufficient to establish that ethnic Russians are systematically persecuted in Kyrgyzstan.

An applicant for withholding of removal can show entitlement to relief by establishing "a pattern or practice of persecution of a group of persons similarly situated . . . on account of race, religion, nationality, membership in a particular social group or political opinion," and by showing the applicant's "own inclusion in and identification with such group of persons such that it is more likely than not that his or her life or freedom would be threatened . . . ." 8 C.F.R. § 1208.16(b)(2). Here, Vasilev provided evidence that Russians are subject to some discrimination in Kyrgyzstan, but this evidence of discrimination does not support a finding of persecution. Persecution is an "extreme concept that does not include every sort of treatment that our society regards as offensive." *Gulezian*

*v. Mukasey*, 290 F. App'x 888, 895 (6th Cir. 2008). The articles and information Vasilev submitted to the IJ discuss discrimination in employment and "occasional indignities such as verbal taunting from Kyrgyz youth." This is similar to the information contained in the 2005 State Department Country Report, which found that ethnic minorities reported some discrimination in hiring, promotion, and housing, and noted that "Russian speaking citizens alleged that a ceiling precluded promotion beyond a certain level in government service." However, we have held that "'[d]iscrimination alone 'does not rise to the level of persecution.'" *Gulezian*, 290 F. App'x at 895 (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 391 (6th Cir. 1998)). Although Vasilev has presented some evidence of discrimination against ethnic Russians in Kyrgyzstan, substantial evidence supports the decisions of the IJ and BIA finding that Vasilev has failed to meet his burden of showing a clear probability of persecution should he return to Kyrgyzstan.

Because substantial evidence supports the decisions of the IJ and BIA that Vasilev was not entitled to withholding of removal, his petition is DENIED.